Joanne Fischer et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare et al., Respondents.

Argued September 16, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR. and CRAIG. Reargued March 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG, MACPHAIL and DOYLE.

*Kathryn Kolbert,* with her *Susan Cary Nicholas, Seth Kreimer,* and of counsel, *Virginia Kerr,* for petitioners.

*Andrew S. Gordon,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, Chief, Civil Litigation, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

*Robert F. Williams,* of counsel, *Thomas B. Harvey,* for Amicus Curiae, American Civil Liberties Foundation.

*Beth Olanoff,* with her *Lynn Miller,* for Amicus Curiae, Religious Coalition for Abortion Rights.

OPINION IN SUPPORT OF SUSTAINING PRELIMINARY OBJECTIONS BY JUDGE BLATT, April 8, 1982:

Before us now are the preliminary objections of the Department of Public Welfare to a petition for review in the nature of a complaint in equity addressed to our original jurisdiction.

The petition for review seeks to restrain the implementation of the Act of December 19, 1980, P.L. 1321 (Act 239), 62 P.S. §453, which permits the use of medical assistance funds for abortions only where such procedures are necessary to save the life of the mother or where the woman is a victim of rape or incest. Act 239 specifically provides:

Expenditure of public funds for abortions limited

Since it is the public policy of the Commonwealth to favor childbirth over abortion, no Commonwealth funds and no Federal funds which are appropriated by the Commonwealth shall be expended by any State or local government agency for the performance of abortion: Provided, That nothing in this act shall be construed to deny the use of funds where a physician has certified in writing that the life of the mother would be endangered if the fetus were carried to full term or except for such medical procedures necessary for the victims of rape or incest when such rape or incest has been reported promptly to a law enforcement agency or public health service. Nothing contained in this

section shall be interpreted to restrict or limit in any way, appropriations, made by the Commonwealth or a local governmental agency to hospitals for their maintenance and operation, or, for reimbursement to hospitals for services rendered which are not for the performance of abortions.

Also here challenged are regulations promulgated by the Department of Public Welfare which define a "rape or incest [which] has been reported promptly'', as referred to in Act 239, as follows:

an abortion will be authorized only under the following conditions:

. . . .

(2) In the case of rape or incest, provided that such rape or incest was reported to a law enforcement agency or public health service as follows:

(i) In the case of rape, within 72 hours of its occurrence.

(ii) In the case of incest, where the incest was reported within 72 hours from the time the victim was advised that she was pregnant.

11 Pa. B. 657 (1981).

The principal individual petitioners object to Act 239 because, while it provides for abortion funding where necessary to save the mother's life, it does not provide such funding where an abortion is performed to preserve a mother's health. They represent themselves and a class of persons similarly situated, who are pregnant women eligible for medical assistance and who desire to have abortions which their physicians have determined are medically necessary, but who are ineligible for medical assistance because their physicians are unable to certify that their patients' lives would be endangered if they carried the fetuses

to full term. They also allege that they and the women whom they represent are without funds to obtain an abortion if refused medical assistance. A number of these petitioners aver that their decisions to seek abortions have been motivated not only by the advice of their physicians but also by their own religious beliefs and by the counsel of their spiritual advisors.[1]

The remaining petitioners include: physicians who assert that Act 239 will, as to them, work an economic hardship and will prevent their provision of necessary medical services in accordance with their best medical judgment; a medical clinic which provides abortion services; the directors of Planned Parenthood of Southeastern Pennsylvania and of Women Organized Against Rape of Philadelphia, Pennsylvania, both being nonprofit entities engaged in the provision of counseling and other services to individuals directly

---

[1] For example, petitioner Dolores Hughes is indigent and pregnant and has been advised by her physician to terminate her pregnancy by abortion because of her high blood pressure and asthma and on account of the medical complications which resulted during the course of her previous pregnancies. Ms. Hughes' physician, however, is unable to certify that her pregnancy is presently life endangering. Petitioners Jane Doe and Helen Doe also suffered from serious complications in previous pregnancies including infection and severe post partum hemorrhaging and have been advised by their physicians that, although their present conditions are not life endangering, abortions are necessary to preserve their health. Ms. Doe also asserts that under her circumstances an abortion is required by the tenets of her religious faith. Susan Doe is a victim of uterine cancer and has been advised by her physician to terminate her pregnancy by abortion on account of the serious effect on her health that would result from now bearing a child. In addition it is asserted that pregnant cancer patients like Susan Doe who are unable to obtain an abortion will be required to forego their prescribed radiological therapy and chemotherapy in order to preserve the life and health of the developing fetus although this same abstinence will have a seriously deleterious although not life endangering effect on the health of the expectant woman.

affected by Act 239 and corresponding regulations; a minister of the Episcopal Church who, in his clerical capacity, counsels pregnant women affected by Act 239; and a taxpayer of the Commonwealth of Pennsylvania, petitioner Fischer, who asserts that Act 239, if implemented, will result in an unlawful expenditure of Commonwealth funds.

The petitioners have challenged Act 239[2] as infirm with respect to both the Pennsylvania and Federal Constitutional guarantees of privacy, religious freedom, equal protection and due process of the laws.[3] And, in response to this broad-based attack, the Commonwealth defendants have interposed Preliminary Objections in the nature of a demurrer thereby asserting that the petitioners have failed to state claims upon which relief can be granted.

[2] This Court, by Order of Judge MacPhail dated August 10, 1981, granted the petitioners' request for a preliminary injunction forestalling implementation of Act 239 pending resolution of the merits of the instant petition for review. That Order was unanimously upheld by our Supreme Court on January 29, 1982.

[3] Petitioners do not argue that Act 239 violates Article I, Section 28 of the Pennsylvania Constitution which provides that "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." In this regard we note that *Anderson v. Upper Bucks County Area Vocational Technical School*, 30 Pa. Commonwealth Ct. 103, 373 A.2d 126 (1977), allocatur refused May 2, 1978, held to be unlawful under Section 5(a) of the Pennsylvania Human Relations Act, 43 P.S. §955 (forbidding gender based discrimination in the work place) a collective bargaining agreement provision which afforded lesser benefits for disability related to pregnancy than for other long term disability. We there stated our

belie[f] that since pregnancy is unique to women, a disability plan which expressly denies benefits for disability arising out of pregnancy is one which discriminates against women employes because of their sex.

*Id.* at 110, 373 A.2d at 130. *See also West Middlesex Area School District v. Pennsylvania Human Relations Commission*, 39 Pa. Commonwealth Ct. 58, 394 A.2d 1301 (1978).

We have recently reviewed the limited circumstances under which a demurrer may be properly granted in *Vattimo v. Lower Bucks Hospital, Inc.*, 59 Pa. Commonwealth Ct. 1, 428 A.2d 765 (1981):

> In this regard several general propositions must be borne in mind. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of deciding whether preliminary objections in the nature of a demurrer should be sustained. Clevenstein v. Rizzuto, 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A.2d 472 (1960).

*Id.* at 5, 428 A.2d at 767. Even in the light of this holding we must also recognize, however, that the resolution of the preliminary objections here will establish the *law* of this case, and we believe that the petitioners, even if they are able to prove all of the facts which they have alleged in their complaint, have nevertheless failed to state a cause of action here.

We believe, therefore, that the preliminary objections of the Department of Public Welfare (DPW) should be sustained because (1) the reasoning of *Harris v. MacRae*, 448 U.S. 297 (1980), is applicable to this case, (2) Act 239 does not interfere with the petitioners' free exercise of their religious beliefs and (3) the reporting requirements promulgated by DPW are reasonable and, in any event, have not been challenged by a party with standing to do so.

In *Harris* the United States Supreme Court, by a five to four vote, held that federal legislation[4] identical to Act 239 here at issue did not constitute an impermissible establishment of religion and did not violate the guarantees of equal protection of the laws and substantive due process of the laws contained in the Federal Constitution.

It is true, of course, that the decision of the United States Supreme Court in *Harris* is not binding on us in a case involving the Pennsylvania Constitution, but our courts have consistently held that, *for purposes of equal protection claims,* the content of our Constitution is not significantly different from that of the Federal Constitution. *See, e.g., Commonwealth v. Kramer,* 474 Pa. 341, 378 A.2d 824 (1977); *Baltimore & Ohio Railroad Co. v. Department of Labor & Industry,* 461 Pa. 68, 334 A.2d 636 (1975) *appeal dismissed,* 423 U.S. 806 (1975). We recognize the Pennsylvania Supreme Court's holding in *Kroger Co. v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978), that Sunday Blue Laws violated the equal protection guarantees of Article III, §32 of the Pennsylvania Constitution despite the ruling of the United States Supreme Court that such laws were not prohibited by the Federal Constitution, *Two Guys From Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582 (1961), but we do not believe that *Kroger* stands for the proposition that the Pennsylvania Constitution *generally* provides more safeguards for equal protection than the Federal Constitution. In *Kroger,* our Supreme Court reiterated the rule that the concept of equal protection under the two constitutions is not significantly different, but the Court found that it could not ignore the *specific* language of Article III, §32 of the Pennsylvania Constitution which prohibited special laws regulating trade.

---

[4] The so-called Hyde Amendment, Pub. L. No. 96-123, §109, 93 Stat 926.

Pa. Const. art. III, §32(7). There is no such specific language in our Pennsylvania Constitution applicable to the case now before us and we would, therefore, hold that the general rule recognizing the similarity of the Federal and Pennsylvania Constitutions in equal protection cases is applicable here[5] and that, under the reasoning of the United States Supreme Court in *Harris*, Act 239 does not violate the petitioners' rights to equal protection of the laws.

We would also hold that Act 239 does not interfere with the petitioners' rights freely to exercise their religious beliefs. Even if the petitioners are required by their respective religions to obtain abortions which are medically necessary to preserve their health, the only stumbling block to such an exercise is their own indigency, not the Commonwealth's decision to deny funding for such abortions. *See, Maher v. Roe*, 432 U.S. 464 (1977). It is true that a state cannot deny an otherwise available public benefit, such as unemployment compensation, because individual claimants choose to exercise their religious beliefs, *Thomas v. Review Board of the Indiana Employment Security Division*, 101 S.Ct. 1425 (1981); *Sherbert v. Verner*, 374 U.S. 398 (1963), but such is not the situation here. There is no causal connection between the petitioners' exercise of their religious freedom and the Act 239 limitation on abortion funding. The public benefit which is sought here, funding for abortions which are

---

[5] Other cases which have granted greater protection under the Pennsylvania Constitution than was available under the Federal Constitution did not concern equal protection claims. *In Re: B.*, 482 Pa. 471, 394 A.2d 419 (1978) (right to privacy); *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977) (right to trial by jury and right against self-incrimination); *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A.2d 478 (1971) (due process); *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970) (styled as a due process challenge, but equal protection considerations were alluded to in footnote 6 but not decided).

medically necessary to preserve the mother's health, is not available to *anyone*, regardless of religious beliefs. It cannot be said, therefore, that the legislature has denied a public benefit to the petitioners *as a result* of their choice to exercise their religious beliefs.

Moreover, an order that would *require* the Commonwealth to fund the abortions requested by any of the petitioners because of their particular religious convictions would violate the First Amendment establishment clause of the Federal Constitution, and Article I, Section 3 and Article III, Section 29 of the Pennsylvania Constitution, Pa. Const. art. I, §3 and art. III, §29, because such an action would constitute a direct subsidization and encouragement of the religious beliefs of the said petitioners.

Finally, we would conclude that none of the petitioners have standing to challenge the Departmental regulations conditioning abortion funding for rape and incest victims upon a 72-hour reporting requirement. 11 Pa. B. 657 (1981). Our review of the pleadings reveals that, in Counts IV, V and VI of the petition for review which challenge the reporting requirements, the only injuries which are alleged relate to indigent rape and incest victims and to petitioner Fischer as a taxpayer. There are clearly no allegations that the petitioner-doctors are in any way harmed or that the nonprofit organizational petitioners suffer any direct harm to themselves as a result of the reporting requirements. Absent such allegations of direct, substantial and immediate injury to such petitioners themselves we must conclude that the doctors and these organizations do not have standing to bring this action. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). Nor do we believe that the organization, Women Organized Against Rape (WOAR), has standing to sue in a representational capacity for indigent rape and incest

victims who may be affected by the reporting requirements. Although WOAR alleges that it provides counseling, advocacy and other assistance to rape and incest victims, it has not alleged that any indigent persons who have suffered such attacks are *members* of the organization. WOAR describes such persons only as "clients." Although its activities in relation to them may evidence a commendable concern for such victims, we cannot say that mere concern for or attempts to aid a certain class of persons automatically endows an organization with standing to sue on their behalf. We would conclude that WOAR's services to indigent rape and incest victims do not create a sufficiently immediate or direct injury so as to give WOAR standing to sue under the requirements set forth by our Supreme Court in *William Penn Parking Garage. See also Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ; *Concerned Taxpayers v. Commonwealth*, 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978). And, as to the individual petitioners here, none has alleged that she is or was a rape or incest victim and we cannot say that the fact that an indigent woman is a *potential* rape victim gives her such a direct or immediate interest in the reporting requirements involved here so as to confer standing to challenge the regulations. Similarly, petitioner Fischer's argument that, as a taxpayer, she has standing to sue in order to ensure that tax dollars are not used to operate an unconstitutional medical assistance program is not persuasive. A taxpayer may have standing to sue to enjoin unlawful expenditures of public funds, *Abington School District v. Yost,* 40 Pa. Commonwealth Ct. 312, 397 A.2d 453 (1979), but that taxpayer must also show a direct actual injury, and an interest merely in preventing a waste of tax revenues is not sufficiently immediate or direct to satisfy that requirement. *Application of Biester,* 487 Pa. 438, 409 A.2d

848 (1979); *William Penn Parking Garage; Concerned
Taxpayers.* In regard to the reporting regulations,
petitioner Fischer is not actually challenging an illegal
expenditure of public funds but she is, instead, object-
ing to a condition which the Commonwealth requires
to be met before it will expend such funds. We believe
that she, as a taxpayer, has, at best, only an indirect
and insubstantial interest in these reporting require-
ments upon which DPW conditions its payment of
funds for abortions for rape and incest victims.

While we must conclude that none of the petitioners
herein has standing to challenge the DPW regulations
here concerned even were we to hold that any of the
petitioners here do have the standing here required, we
believe that the DPW's regulations imposing the re-
porting requirements are in conformity with the lan-
guage of Act 239 and are facially reasonable. The peti-
tioners allege that some rape and incest victims are not
physically or psychologically capable of making the
necessary reports within the periods specified, but,
even accepting those allegations as true, as we must
for purposes of considering preliminary objections,
*Vattimo,* we cannot say that the DPW's regulations
are unreasonable, arbitrary or capricious. The peti-
tioners have a heavy burden when challenging an ad-
ministrative regulation, *Department of Environmental
Resources v. Metzger,* 22 Pa. Commonwealth Ct. 70,
347 A.2d 743 (1975), and we must defer to the agency's
exercise of its discretion unless such exercise was "so
entirely at odds with fundamental principles . . . as to
be the expression of a whim rather than an exercise of
judgment." *Uniontown Area School District v. Penn-
sylvania Human Relations Commission,* 455 Pa. 52, 77,
313 A.2d 156, 169 (1973) (quoting *American Telephone
& Telegraph Co. v. United States,* 299 U.S. 232, 236-37
(1936)). Here, the DPW adopted the 72-hour require-
ment in accordance with the "prompt reporting" lan-

guage of Act 239, not only to ensure the receipt of federal funds by reflecting previously established federal guidelines but also as a means of protecting the Commonwealth against welfare fraud. We believe that the DPW's regulations are reasonable and were neither arbitrary nor capricious.

We would, therefore, sustain the DPW's preliminary objections.

President Judge CRUMLISH and Judge DOYLE join in this opinion.

———

OPINION IN SUPPORT OF OVERRULING PRELIMINARY OBJECTIONS BY JUDGE CRAIG:

At the outset, we note that this case[1] does *not* involve any question of the legality or the morality of medical abortion, the constitutional status of which was initially decided in *Roe v. Wade,* 410 U.S. 113 (1973).

Instead, the ultimate principal issue here is whether a state law may withhold financial aid for a medical abortion needed to preserve the health of an indigent woman and allow it only if her very life is endangered, while not applying any similar limitation to other medical procedures necessary for health preservation alone—recognizing also that the nonindigent woman faces no such distinction.

More precisely, because the Commonwealth here asks us to dismiss the case summarily upon preliminary objections, the immediate issue is whether we should do so without allowing any opportunity for a hearing in which evidence can be presented for judicial consideration.

---

[1] This opinion concurs with the statement of pleadings and record set forth in the Opinion in Support of Sustaining Preliminary Objections.

Relying almost exclusively on *Harris v. McRae,* 448 U.S. 297 (1980) the Commonwealth has argued, in effect, that the legal issues raised by the Petitioners' challenge have been decided by that case and that any corresponding issues of fact are such that we may properly dispense with the necessity for responsive pleadings and the production of an evidentiary record. We must reject these arguments.

*Harris v. McRae* did not involve the Pennsylvania Constitution and it is basic to our federalism both that "[s]tate constitutional issues are ultimately decided by [our Supreme] Court, not the federal courts . . . ," *Bargain City U.S.A. v. Dilworth,* 407 Pa. 129, 132, 179 A.2d 439, 442 (1962), and that the well established "difference between federal and state constitutional law represents a sound development. . . . State Courts, since their precedents are not of national authority, may better adapt their decisions to local . . . conditions and needs. . . ." *Pennsylvania State Board of Pharmacy v. Pastor,* 441 Pa. 186, 190, 272 A.2d 487, 490 (1971) quoting *Hetherington, State Economic Regulation and Substantive Due Process of Law,* 53 Nw. U.L. Rev. 226, 250 (1958) (footnote omitted).

Moreover, the decisions of the appellate courts of this Commonwealth contain numerous examples of the general proposition that the Pennsylvania Constitution may afford greater protections than that of its federal counterpart. *See e.g. In re B.,* 482 Pa. 471, 394 A.2d 419 (1978) (greater protection of the right to privacy); *Kroger Company v. O'Hara Township,* 481 Pa. 101, 392 A.2d 266 (1978) (Sunday closing laws violative of Pennsylvania Constitution although valid under federal law. *See McGowan v. Maryland,* 366 U.S. 420 (1961); *Pennsylvania State Board of Pharmacy v. Pastor, supra.* One may also compare *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252 (1977) (proof of racially discriminatory motiva-

tion required to invalidate local zoning ordinance) with *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970) (exclusionary effect sufficient); and *Corbitt v. New Jersey*, 439 U.S. 212 (1978) (increased criminal sentence permissible when defendant refuses to enter a guilty plea) with *Commonwealth v. Bethea*, 474 Pa. 571, 379 A.2d 102 (1977) (no such penalty permitted). In sum, "[i]n view of the fact that the present [challenge] is also grounded upon the Pennsylvania Constitution [the decision of the United States Supreme Court with respect to the same legislative enactment] is not controlling precedent. . . ." *Kroger Company v. O'Hara Township*, 481 Pa. at 122, 392 A.2d at 277. *Harris v. McRae*, as the decision of the highest court of a sister jurisdiction in which was resolved many of the issues here raised, can afford this Court no more and no less than helpful guidance. In this regard it must be noted that the decision in *Harris v. McRae* was predicated on an exhaustive exploration of the relevant facts by Judge Dooling for the Federal District Court for the Eastern District of New York. Further, other states which have been asked to adopt the holdings of *Harris v. McRae* in the context of their constitutions as applied to statutes materially identical to that now before us (all after exploration of the facts) have declined to do so, holding such legislation contrary to their states' fundamental laws. *See Moe v. Secretary of Administration and Finance,*      Mass. , 417 N.E. 2d 387 (1981); *Committee to Defend Reproductive Rights v. Myers*, 29 Cal.3d 252, 625 P.2d 779 (1981); *Doe v. Maher,*      Conn. Superior Ct.      , A.2d      (1981) (No. 19-68-74, filed October 9, 1981); *Right to Choose v. Byrne*, 165 N.J. Superior Ct. 443, 398 A.2d 587 (1979).

Even were we persuaded by the constitutional determination expressed by the majority of the court in *Harris v. McRae* and of the applicability of those de-

terminations to the strictures of the Pennsylvania Constitution, we would nevertheless be constrained to overrule the Commonwealth's demurrer on at least two additional grounds. First, the 72 hour reporting requirement imposed by the Department of Welfare in the case of rape or incest and here challenged was not involved in *Harris v. McRae.* Second, the petitioners here mount a substantial challenge to the Act based on the Act's asserted interference with the petitioners' free exercise of their religious beliefs. This attack was sustained by Judge DOOLING for the Federal District Court but not decided by the United States Supreme Court in *Harris v. McRae.*

With respect to the 72 hour prompt reporting requirements in the case of pregnancy resulting from rape or incest the petitioners aver *inter alia* that in many instances the physical and emotional condition of the rape or incest victim will render the requirements impossible of compliance and that in other instances where compliance is possible such a brief interval between the trauma and the necessity of reporting would do great injury to the health and well-being of the victim. In its demurrer the Commonwealth does not and, indeed, could not meet these essentially factual averments head on. Instead the Commonwealth argues that none of the petitioners has standing to challenge this requirement.

The affidavit of petitioner Dr. John Franklin, M.D. attached as an exhibit to the Petition contains the assertion that implementation of the reporting requirement will work an immediate and irreparable hardship on him because he will continue to perform abortions for indigent women for which he will receive no reimbursement. In *Singleton v. Wulff,* 428 U.S. 106 (1976) physicians challenged, on federal constiutional grounds, the validity of a Missouri statute which excluded from medical assistance reimbursement all

abortions other than those "medically indicated." On the issue of the physicians' standing to assert their challenges the Court wrote:

there is no doubt now that the respondent-physicians suffer concrete injury from the operation of the challenged statute. Their complaint and affidavits, described above, allege that they have performed and will continue to perform operations for which they would be reimbursed under the Medicaid program, were it not for the limitation of reimbursable abortions to those that are 'medically indicated.' If the physicians prevail in their suit to remove this limitation, they will benefit, for they will then receive payment for the abortions. The State (and Federal Government) will be out of pocket by the amount of the payments. The relationship between the parties is classically adverse, and there clearly exists between them a case or controversy in the constitutional sense. [Citations omitted.]

*Id.* 428 U.S. at 112-113. *Accord Harrisburg School District v. Harrisburg Education Association,* 32 Pa. Commonwealth Ct. 348, 354, 379 A.2d 893, 899 (1977). The physician petitioner has standing to challenge the constitutionality of those provisions of the Act, including the 72 hour reporting requirement, which would deprive him of payment for abortion services rendered by him on behalf of indigent patients.

Finally, as indicated, the petitioners argue that the Act would interfere with the free exercise of their religious beliefs and that no compelling interest of the state justifies this interference. If this argument is well founded, that is, if it can be established by the facts as developed in an evidentiary proceeding, then, of course, the Act must fall. *Wiest v. Mt. Lebanon's School District,* 457 Pa. 166, 320 A.2d 362 (1974) *cert.*

*denied,* 419 U.S. 967 (1974). Specifically, by their affidavits, several petitioners aver that the termination of their pregnancies by abortions under their particular circumstances is mandated by the religious tenets of their faiths. That certain religious sects deem abortion to be the only moral response to certain pregnancies including those which will result in great suffering on the part of the pregnant woman or great danger to her health short of the threat of death necessary for reimbursement under the Act, is confirmed by the affidavit of petitioner, the Reverend Paul Washington, and by the affidavits of Rabbi David Feldman and Rabbi Brooks R. Susman. In *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707 (1981) a Jehovah's Witness challenged the State of Indiana's denial of his claim for unemployment benefits on the ground that his decision to leave his position of employment was motivated by his religious beliefs. The Court responded to the state's asserted incredulity with respect to the strength of Mr. Thomas' religious beliefs by observing that:

> Intrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; but that is not the case here, and the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.

*Id.* at 715-16.

On the precise issue here presented the Court wrote:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Id.* at 717-18. *See also Sherbert v. Verner,* 374 U.S. 398 (1963).

As we have indicated, the Court in *Harris v. McRae* did not purport to decide whether the legislation at issue there (and here) transgressed the consitutional guarantee of the free exercise of religious belief because it held that no plaintiff in that case had averred that her religious beliefs mandated an abortion in circumstances where reimbursement would be unavailable. Here such averments have been clearly and repeatedly presented. We cannot say, at this preliminary stage of these proceedings that the petitioners could not establish as fact that the Act works the same indirect interference with the exercise of their religious beliefs as the denial of unemployment benefits was held to do in *Thomas* and *Sherbert v. Verner.*

Of course, in concluding that the respondent's demurrer should be overruled, we do not decide the merits of any of the petitioners' contentions. We conclude only that the Commonwealth has brought to our attention no controlling authority in support of its demurrer, that a number of the petitioners' contentions depend for their just resolution on an examination and assessment of the relevant facts, and that it would be improper to dismiss the petitioners' claims in the summary manner proposed by the respondents.

Judges ROGERS and MACPHAIL join in this opinion.

## Per Curiam Order

And Now, this 8th day of April, 1982, the respondents having failed to sustain their burden of convincing a majority of this Court that their preliminary objections in the above-captioned matter should be sustained, and, in a like fashion, the petitioners having failed to persuade a majority of this Court that said preliminary objections should be overruled, but recognizing that an order is necessary before an appeal of this matter may be taken to our Supreme Court, we hereby order that the preliminary objections of the respondents be overruled, and

We hereby certify that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the case above-captioned.