Harrisburg School District *v.* Harrisburg Education Association et al., Appellants.

Argued September 14, 1977, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, ROGERS and BLATT.

*Thomas W. Scott,* with him *Killian & Gephart,* for
appellants.

*Miles J. Gibbons, Jr.,* with him *Morgan, Lewis &
Bockius,* for appellees.

OPINION BY JUDGE ROGERS, November 10, 1977:

The Harrisburg Education Association and the Pennsylvania State Education Association,[1] labor unions, have appealed an order of the Dauphin County Court of Common Pleas entered in a suit by the Harrisburg School District enjoining striking teachers, members of the unions, from picketing the residences of members of the School Board. No school board member has been a party to this lawsuit.

During a teachers strike while collective bargaining negotiations were being conducted, teachers picketed the homes of the District's nine school board members. On October 22, 1976, the District sued in equity seeking preliminary and permanent relief of injunction of the residential picketing. The same day the court below granted an *ex parte* preliminary injunction. On October 27, 1976, the defendants requested a final hearing; and in addition filed preliminary objections asserting that the District lacked standing to assert the school board members' constitutional rights to privacy in their homes, that the lower court lacked jurisdiction to hear and decide issues presented by the District because the Pennsylvania Employe Relations Act[2] provides an adequate statutory remedy, and that the District's complaint failed to state a cause of action. The court conducted an evidentiary hearing on October 28, 1976, after which it dismissed the defendants' preliminary objections and issued a decree permanently enjoining the picketing of the residences of school board members. We will reverse this order.

Since we conclude that the Harrisburg School Dis-

---

[1] Both Associations were named defendants in the Harrisburg School District's suit. The Harrisburg Education Association is the certified collective bargaining representative of the District's teachers and is affiliated with the State Education Association.

[2] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.101 et seq.

trict lacks standing to bring this suit and that the court below erred in not so ruling, we do not reach the interesting question of whether the picketing of the residences of public officers by public employes is, in Pennsylvania, to be held to be a protected right of speech or unlawful invasion of privacy.

The District, the only plaintiff, says that the picketing constituted a violation of its school members' constitutional rights to privacy and that its, the District's, relationship with the board members is so close that it has standing to assert their rights on their behalf. We disagree.

In the recent case of *Singleton v. Wulff,* 428 U.S. 106, 113-16 (1976), the Supreme Court of the United States thoroughly analyzed the question of a litigant's standing to assert third party constitutional rights:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is succesesful or not. See Ashwander v. TVA, 297 U.S. 288, 345-348, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (BRANDEIS, J., concurring, and offering the standing requirement as one means by which courts avoid unnecessary constitutional adjudications). Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the

rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis. See, e.g., Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed. 2d 663 (1962) (standing requirement aimed at 'assur[ing] that concrete adverseness which sharpens the presentation of [the] issues upon which the court so largely depends') ; Holden v. Hardy, 169 U.S. 366, 397, 18 S.Ct. 383, 390, 42 L.Ed. 780 (1898) (assertion of third parties' rights would come with 'greater cogency' from the third parties themselves). These two considerations underlie the Court's general rule: 'Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.' Barrows v. Jackson, 346 U.S. at 255, 73 S.Ct. at 1034. See also Flast v. Cohen, 392 U.S. at 99 n. 20, 88 S.Ct. at 1952; McGowan v. Maryland, 366 U.S. 420, 429, 81 S.Ct. 1101, 1106, 6 L.Ed. 2d 393 (1961).

Like any general rule, however, this one should not be applied where its underlying justifications are absent. With this in mind the Court has looked primarily to two factual elements to determine whether the rule should apply in a particular case. *The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit.* Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly,

as effective a proponent of the right as the latter. Thus in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965), where two persons had been convicted of giving advice on contraception, the Court permitted the defendants, one of whom was a licensed physician, to assert the privacy rights of the married persons whom they advised. The Court pointed to the 'confidential' nature of the relationship between the defendants and the married persons, and reasoned that the rights of the latter were 'likely to be diluted or adversely affected' if they could not be asserted in such a case. Id., at 481, 85 S.Ct. at 1680. See also Eisenstadt v. Baird, 405 U.S. 438, 445-446, 92 S.Ct. 1029, 1034, 31 L.Ed. 2d 349 (1972) (stressing 'advocate' relationship and 'impact of the litigation on the third party interests'); Barrows v. Jackson, 346 U.S., at 259, 73 S.Ct. at 1036 (owner of real estate subject to racial covenant granted standing to challenge such covenant in part because she was 'the one in whose charge and keeping repose[d] the power to continue to use her property to discriminate or to discontinue such use'). A doctor-patient relationship similar to that in Griswold existed in Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed. 2d 201 (1973), where the Court also permitted physicians to assert the rights of their patients. Id., at 188-189, 93 S.Ct., at 745-46. . . .

*The other factual element to which the Court has looked is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply.* If there is some genuine obstacle to

such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by the default the right's best available proponent. Thus, in NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958), the Court held that the NAACP, in resisting a court order that it divulge the names of its members, could assert the First and Fourteenth Amendments rights of those members to remain anonymous. The Court reasoned that '[t]o require that [the right] be claimed by the members themselves would result in [the] nullification of the right at the very moment of its assertion.' Id., at 459, 78 S.Ct. at 1170. See also Eisenstadt v. Baird, 405 U.S., at 446, 92 S.Ct. at 1034; Barrows v. Jackson, 346 U.S. at 259, 73 S.Ct. at 1036. (Emphasis added.) (Footnotes omitted.)

To paraphrase, *Singleton v. Wulff, supra,* offers two "factual elements" for consideration in determining whether the general rule that one may not claim standing to vindicate the constitutional rights of others should not apply; the first, whether the relationship of the litigant to the third party is such that enjoyment of the right by the third party is inextricably bound up with the activity the litigant seeks to pursue; and the second, whether there is some obstacle to the assertion by the third party of his own right. We adopt this rule for standing to assert third party constitutional rights.

We find nothing in this record demonstrating that enjoyment by school board members of their right to privacy in their home is "inextricably bound up" with the collective bargaining activity which the District is pursuing. The precise holding in *Singleton v. Wulff,*

*supra,* was that physicians had standing to challenge the constitutionality of a Missouri statute excluding non-medically indicated abortions from Medicaid benefits on the basis that it violated the constitutional rights of privacy of needy women who seek abortions. The Court described the closeness of the relationship as patent because a woman cannot safely secure her right to an abortion without the aid of a physician. *See also Griswold v. Connecticut,* 381 U.S. 479 (1965). The rule of *Singleton v. Wulff, supra,* is then that to satisfy the "close relationship" requirement the constitutional right of a third party must be that of engaging in an activity in which the litigant will be a participant, so that the "right" and the "activity" are "inextricably bound." The school board members' right not to be picketed at their homes, assuming that it exists, has a remote, if any, relationship to the District's pursuit of a collective bargaining agreement.

Furthermore, there is no obstacle, large or small, to the assertion of their rights by the school board members.

In addition to its concern over its board members' right of privacy, the District asserts that restraint of the picketing at its directors' homes was properly ordered because the purpose of the picketing was to coerce school board members personally to participate in collective bargaining. The District's claim is that the unions are engaged in an unfair labor practice because Section 1201(b)(2) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(b)(2), provides:

(b) Employe organizations, their agents, or representatives or public employes are prohibited from:

. . . .

(2) Restraining or coercing a public employer in the selection of his representative for the purposes of collective bargaining. . . .

Since Section 1301 of PERA, 43 P.S. §1101.1301, grants exclusive power to the Pennsylvania Labor Relations Board to prevent unfair labor practices, the District's remedy is not in equity but by recourse to the Pennsylvania Labor Relations Board. The District's assertion that the Board will not act with the dispatch needed to provide effective relief is unpersuasive.

Order reversed.

ORDER

AND Now, this 10th day of November, 1977, the final decree of the Court of Common Pleas of Dauphin County made November 3, 1976 is reversed.