IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny Reproductive Health Center, Allentown Women's Center, Delaware County Women's Center, Philadelphia Women's Center, Planned Parenthood Keystone, Planned Parenthood Southeastern Pennsylvania, and Planned Parenthood of Western Pennsylvania, Petitioners | : : : : : : : : : | |
| v. | : : | No. 26 M.D. 2019 Argued: October 14, 2020 |
| Pennsylvania Department of Human Services, Teresa Miller, in her official capacity as Secretary of the Pennsylvania Department of Human Services, Leesa Allen, in her official capacity as Executive Deputy Secretary for the Pennsylvania Department of Human Service's Office of Medical Assistance Programs, and Sally Kozak, in her official capacity as Deputy Secretary for the Pennsylvania Department of Human Service's Office of Medical Assistance Programs, Respondents | : : : : : : : : : : : : : : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 26, 2021

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

Petitioners are Allegheny Reproductive Health Center, Allentown Women's Center, Delaware County Women's Center, Philadelphia Women's Center, Planned Parenthood Keystone, Planned Parenthood Southeastern Pennsylvania, and Planned Parenthood of Western Pennsylvania (collectively, Reproductive Health Centers). They are medical providers licensed by the Commonwealth of Pennsylvania to provide abortion services. Reproductive Health Centers have filed a petition for review seeking declaratory and injunctive relief, asserting that Sections 3215(c) and (j) of the Abortion Control Act[2] are unconstitutional because they discriminate against pregnant women enrolled in Medical Assistance who choose to have an abortion.

Respondents are the Pennsylvania Department of Human Services; the Secretary of Human Services, Teresa Miller; the Executive Deputy Secretary of Human Services, Leesa Allen; and the Deputy Secretary for the Office of Medical Assistance Programs, Sally Kozak (collectively, Commonwealth Respondents). The Commonwealth Respondents have moved to dismiss the petition, asserting that Reproductive Health Centers lack standing to raise constitutional claims that belong to other persons, *i.e.*, women enrolled in Medical Assistance. The Commonwealth Respondents also assert, along with the Intervenors,[3] that the petition for review fails to state a legally cognizable claim under the Pennsylvania Constitution.

---

[2] 18 Pa. C.S. §3215(c), (j).

[3] Senate Intervenors are Senators Joseph B. Scarnati, III, Jacob Corman, Ryan Aument, Michele Brooks, John DiSanto, John Gordner, Scott Hutchinson, Wayne Langerhole, Daniel Laughlin, Scott Martin, Robert Mensch, Michael Regan, Mario Scavello, Patrick Stefano, Judy Ward, Kim Ward, Eugene Yaw, and David Arnold. On February 9, 2021, the parties filed a stipulation to dismiss Senators Scarnati and Arnold from the action. On February 10, 2021, the Court marked the action discontinued and ended as to Senators Scarnati and Arnold.

For the reasons that follow, we sustain the preliminary objections and dismiss the petition.

## Background

Medicaid is a joint federal-state public program that provides medical services to low-income persons; in Pennsylvania, it is known as Medical Assistance and administered by the Department of Human Services. Petition for Review ¶40, ¶¶44-45. Medical Assistance includes a Fee-for-Service program that "reimburses providers directly for covered medical services provided to enrollees" as well as a managed care program, HealthChoices, that "pays a per enrollee amount to managed care organizations that agree to reimburse health care providers that provide care for enrollees." *Id.* ¶46. "With some exceptions, Medical Assistance enrollees are required to enroll with a managed care organization participating in HealthChoices rather than the Fee-for-[S]ervice program." *Id.* ¶47.

Medical Assistance covers family planning and pregnancy-related care, including prenatal care, obstetrics, childbirth, neonatal, and post-partum care. Petition for Review ¶48. Medical Assistance does not cover nontherapeutic abortions. *Id.* ¶50. Pennsylvania's Abortion Control Act[4] prohibits the expenditure of appropriated state and federal funds for abortion services except where (1) necessary to avert the death of the pregnant woman, (2) the pregnancy resulted from rape, or (3) the pregnancy resulted from incest. 18 Pa. C.S. §3215(c). Likewise, regulations of the Department of Human Services prohibit Medical Assistance

House Intervenors are Representatives Bryan D. Cutler, Stan E. Saylor, Kerry A. Benninghoff, Marcy Toepel, Donna Oberlander, Michael Reese, Kurt A. Masser, and Martin T. Causer.

[4] 18 Pa. C.S. §§3201-3220.

coverage for abortions, except in the above-listed exceptional cases.[5]   *Id*. ¶50. Collectively, the Abortion Control Act and the Department's regulations are referred to as the "coverage ban." *Id*. ¶¶49-50.

On January 16, 2019, Reproductive Health Centers filed a petition for review seeking declaratory and injunctive relief in order to end this coverage ban. Reproductive Health Centers provide approximately 95% of the abortion services performed in the Commonwealth.  Petition for Review ¶33.  Their patients include women enrolled in Medical Assistance.  *Id.* ¶57.  The coverage ban prohibits Reproductive Health Centers from billing or being reimbursed for abortion services provided to women enrolled in Medical Assistance whose pregnancies do not fall into one of the three above-enumerated exceptions. *Id.* ¶52.

The petition alleges that the coverage ban harms women enrolled in Medical Assistance because they are forced to choose between continuing their pregnancy to term or using funds needed for essentials of life to pay for an abortion procedure.  Petition for Review ¶59.  Because the facilities in Pennsylvania that perform abortions are few in number, some women must travel significant distances to obtain a safe and legal abortion. *Id.* ¶60.  If abortion were a covered procedure, some of those transportation costs would be reimbursed by Medical Assistance. *Id.* The coverage ban causes women on Medical Assistance to delay an abortion while they raise funds to pay for the procedure. *Id.* ¶61.  Although Reproductive Health Centers assist their Medical Assistance patients to obtain this funding, they are not always successful. *Id.* ¶62.  The coverage ban has forced many women to carry their pregnancies to term against their will. *Id.* ¶¶63-64.

---

[5] *See* 55 Pa. Code §§1141.57, 1163.62 and 1221.57.

4

The petition alleges that the coverage ban has also caused direct harm to Reproductive Health Centers. Specifically, the coverage ban forces them to divert money and staff from "other mission-central work" to help women enrolled in Medical Assistance who lack the funds to pay for their abortions. Petition for Review ¶84. Reproductive Health Centers "regularly subsidize (in part or in full) abortions for Pennsylvania women on Medical Assistance who are not able to pay the fee on their own." *Id.* ¶85. Reproductive Health Centers expend "valuable staff resources to assist patients in securing funding from private charitable organizations that fund abortion[s] for women on Medical Assistance." *Id.* ¶86. Staff must also delve "into personal matters that the patient may not wish to discuss," *i.e.*, whether the pregnancy was the result of rape or incest. *Id.* ¶87.

The petition for review contains two counts. Count I asserts that the coverage ban violates Article I, Section 28 of the Pennsylvania Constitution, commonly referred to as Pennsylvania's Equal Rights Amendment,[6] because it denies coverage of a medical procedure that can be used only by women. Count II asserts that the coverage ban violates several other provisions of the Pennsylvania

---

[6] The Equal Rights Amendment provides:

> Equality of rights under the law shall not be abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

PA. CONST. art. I, §28.

Constitution, specifically Article I, Sections 1[7] and 26[8] and Article III, Section 32,[9] that establish the guarantee of equal protection of the laws. Asserting that the coverage ban unconstitutionally restricts indigent women in the exercise of their right to terminate a pregnancy, Reproductive Health Centers request this Court to declare the coverage ban unconstitutional and to enjoin its enforcement.

The Commonwealth Respondents, along with the Senate Intervenors and the House Intervenors, have filed preliminary objections in the nature of a demurrer. Specifically, they assert that the petition for review fails to state a cause of action upon which relief can be granted. In addition, the Commonwealth Respondents assert that Reproductive Health Centers lack standing to vindicate the individual constitutional rights of other parties, *i.e.*, all women enrolled in Medical Assistance.[10]

---

[7] This Section states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1.

[8] This Section provides:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

PA. CONST. art. I, §26.

[9] This Section states, in part:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law[.]

PA. CONST. art. III, §32.

[10] Four *amici curiae* briefs were filed in support of Reproductive Health Centers' position. *Amici* are: (1) The National Health Law Program; (2) New Voices for Reproductive Justice and Pennsylvania and National Organizations Advocating for Black Women and Girls; (3) Members of the Democratic Caucuses of the Senate of Pennsylvania and the Pennsylvania House of

**Preliminary Objections**

In reviewing preliminary objections in the nature of a demurrer, this Court "must accept as true all well pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom." *Buoncuore v. Pennsylvania Game Commission*, 830 A.2d 660, 661 (Pa. Cmwlth. 2003). We are not required to accept as true "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* For this Court to sustain preliminary objections, "it must appear with certainty that the law will not permit recovery[.]" *McCord v. Pennsylvania Gaming Control Board*, 9 A.3d 1216, 1218 n.3 (Pa. Cmwlth. 2010) (quotation omitted). Where there is any doubt, this Court will overrule the preliminary objections. *Fumo v. Hafer*, 625 A.2d 733, 734 (Pa. Cmwlth. 1993).

**I. Standing**

We begin with the assertion of the Commonwealth Respondents that Reproductive Health Centers lack standing to initiate litigation to vindicate the constitutional rights of their patients enrolled in Medical Assistance. Although the petition for review alleges that the coverage ban causes Reproductive Health Centers to provide abortion services at a loss, the Commonwealth Respondents respond that these alleged pecuniary and administrative harms do not fall within the zone of interests protected by the Equal Rights Amendment and the equal protection clause of the Pennsylvania Constitution, or by the Abortion Control Act. In short, the Commonwealth Respondents assert that Reproductive Health Centers lack standing to bring this action either in their own right or on behalf of women enrolled in Medical Assistance who seek an abortion.

---

Representatives; and (4) The Pennsylvania Religious Coalition for Reproductive Justice (PARCRJ).

Generally, "a party seeking judicial resolution of a controversy 'must establish as a threshold matter that he has standing to maintain the action.'" *Johnson v. American Standard*, 8 A.3d 318, 329 (Pa. 2010) (quoting *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009)). Our Supreme Court explained in the seminal case *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), that

> [t]he core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

*Id*. at 280-81 (footnote omitted).

In determining whether a person is aggrieved, courts consider whether the person has a substantial, direct, and immediate interest in the claim sought to be litigated. *Fumo*, 972 A.2d at 496. In this regard, our Supreme Court has established the following principles:

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law…. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest…. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, … and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*South Whitehall Township Police Service v. South Whitehall Township*, 555 A.2d 793, 795 (Pa. 1989) (citations omitted). The "keystone to standing in these terms is

8

that the person must be negatively impacted in some real and direct fashion." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016) (quoting *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 660 (Pa. 2005)). Critically, our Court has held that generally a "party may not contest the constitutionality of a statute because of its effect on the putative rights of other persons or entities." *Philadelphia Facilities Management Corporation v. Biester*, 431 A.2d 1123, 1131 (Pa. Cmwlth. 1981) (citations omitted).

Reproductive Health Centers contend that they have standing to assert the constitutional rights of others, *i.e.*, their patients enrolled in Medical Assistance. They point out that this Court has specifically allowed medical professionals to assert the constitutional rights of their patients. The Commonwealth Respondents rejoin that this was allowed in the narrow circumstance where the constitutional interests of those medical providers and their patients were inextricably entwined. They contend that circumstance does not exist here.

In *Harrisburg School District v. Harrisburg Education Association*, 379 A.2d 893 (Pa. Cmwlth. 1977), two labor unions representing striking teachers of the school district appealed a trial court order enjoining their teacher members from picketing at the homes of school board members. The trial court held that the school district had standing to represent the interests of its school board members. This Court held otherwise, concluding that the school board members' right to privacy was not "inextricably bound up" with the school district's collective bargaining interests. *Id.* at 896. Additionally, there was no obstacle to the school board members bringing an action on their own to protect their privacy interests.

In reaching this conclusion, this Court applied the analytical paradigm developed in *Singleton v. Wulff*, 428 U.S. 106 (1976), for determining a litigant's

9

standing to assert the constitutional rights of others. In *Singleton*, drawing on precedent, the United States Supreme Court held, first, that courts should not adjudicate constitutional rights unnecessarily because, *inter alia*, it may be that the holders of these rights do not wish to assert them. Second, the Supreme Court held, as characterized by this Court, that

> third parties themselves usually will be the best proponents of their own rights. The courts depend upon effective advocacy, and therefore should *prefer to construe legal rights only when the most effective advocates of those rights are before them*.

*Harrisburg School District*, 379 A.2d at 895 (emphasis added). Using the *Singleton* analytical framework, this Court concluded that the Harrisburg School District lacked standing. The school district's collective bargaining interests were not inextricably connected to the privacy interests of its board members to feel secure in their homes.

In *Pennsylvania Dental Association v. Department of Health*, 461 A.2d 329 (Pa. Cmwlth. 1983), the dental association challenged an amendment to the standard agreement between Pennsylvania Blue Shield and each participating dentist, which had been approved by the Pennsylvania Department of Health.[11] The amendment gave Blue Shield access to patient files when necessary to audit the dentist. The dental association asserted that this contract amendment violated the

---

[11] An organization does not have standing by virtue of its purpose. *See Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 399-400 (Pa. Cmwlth. 2015). Nevertheless, an organization may have standing to bring a cause of action if at least one of its members has standing individually. *North-Central Pennsylvania Trial Lawyers Association v. Weaver*, 827 A.2d 550, 554 (Pa. Cmwlth. 2003). "Where the organization has not shown that any of its members have standing, the fact that the challenged action implicates the organization's mission or purpose is not sufficient to establish standing." *Americans for Fair Treatment, Inc. v. Philadelphia Federation of Teachers*, 150 A.3d 528, 534 (Pa. Cmwlth. 2016).

constitutional right to privacy of its members and their patients. This Court held that the dental association had standing because the privacy interests of its member dentists were "inextricably bound up" with the privacy interests of their patients. *Id.* at 331. We explained that

> *unless individual patients had some means of knowing that the effect of the [Blue Shield amendment] may be to disclose some medical information which they may be entitled to withhold* by invoking their constitutional claim of privacy, the only way those rights could be protected would be by the dentist who is responsible for the patient's records.

*Id.* (emphasis added).

As noted above, this Court adopted the *Singleton* analytical framework in *Harrisburg School District*. We later confirmed that adoption in *Pennsylvania Dental Association*, stating that the "exceptions set forth in *Singleton* appl[y]." *Pennsylvania Dental Association*, 461 A.2d at 331. It is not lost on the Court that in *Singleton,* the United States Supreme Court held that licensed physicians had standing to challenge the constitutionality of a Missouri statute excluding Medicaid coverage of abortions that were not medically indicated. It does not follow, however, that the *Singleton* holding requires the conclusion that Reproductive Health Centers have standing to challenge Pennsylvania's coverage ban in this Court.

In federal courts, standing jurisprudence springs from Article III of the United States Constitution, which requires a case in controversy. *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617 (1989). Our Supreme Court has explained that in Pennsylvania's state courts, standing precepts are not derived from the Pennsylvania Constitution, and, further, our state courts "are not governed by Article III and are thus not bound to adhere to the federal definition of standing." *In re Hickson*, 821

11

A.2d 1238, 1243 n.5 (Pa. 2003). Pennsylvania's standing doctrine "is a prudential, judicially-created tool meant to winnow out those matters in which the litigants have no direct interest in pursuing the matter." *Id*. at 1243. *Singleton's* grant of standing to physicians to challenge the Missouri coverage ban under the United States Constitution is interesting but irrelevant because Reproductive Health Centers are in state court and assert only state constitutional claims.

Standing in Pennsylvania's courts requires a substantial, direct, and immediate interest in the matter sought to be litigated. *William Penn Parking*, 346 A.2d at 280-82. That prime directive informs our application of the *Singleton* paradigm to determine whether Reproductive Health Centers have standing to assert the claims of some of their patients that the coverage ban violates their rights under the Equal Rights Amendment and the equal protection clause of the Pennsylvania Constitution.

We conclude that the application of the *Singleton* paradigm leads to a different conclusion in this case. First, to allow Reproductive Health Centers to assert the rights of others will require this Court to rule on constitutional questions when the Court has no way of knowing that the patients on whose behalf Reproductive Health Centers purport to speak even want this assistance. Second, the petition for review does not allege facts to show that the interests of Reproductive Health Centers are "inextricably bound up" with the equal protection rights of their patients. *Harrisburg School District*, 379 A.2d at 896. By contrast, in *Pennsylvania Dental Association*, the interest of the dentists and their patients were aligned perfectly on their shared constitutional right of privacy. Third, we can ascertain no reason, and none is alleged, why women enrolled in Medical Assistance cannot assert the constitutional claims raised in the petition for review on their own behalf.

12

Unlike the patients in *Pennsylvania Dental Association*, who had no way of knowing that their privacy interests were at stake, the patients of Reproductive Health Centers will be informed, in advance, that abortion services are not covered by Medical Assistance. There is no obstacle to these patients initiating litigation on their own behalf, and none is alleged in the petition for review.

In *Fischer v. Department of Public Welfare*, 444 A.2d 774 (Pa. Cmwlth. 1982) (*Fischer I*), the lead petitioner was a taxpayer, but other petitioners were indigent women advised to terminate their pregnancies for medical reasons. Thereafter a second amended petition for review was filed, and the case was tried before the Commonwealth Court. This Court, in a single-judge opinion by Judge McPhail, concluded that the coverage ban violated the equal protection clause and the Equal Rights Amendment of the Pennsylvania Constitution. *Fischer v. Department of Public Welfare*, 482 A.2d 1137 (Pa. Cmwlth. 1984) (*Fischer II*).[12] Notably, the Department of Public Welfare challenged the standing of some of the petitioners, including clergy and non-profit organizations, at trial. However, this Court held that the issue of standing had been waived because it had not been raised in the Department's pleading. *Id*. at 1139, n.11. The history of the *Fischer* litigation shows that women enrolled in Medical Assistance are fully able to pursue the constitutional claims raised in the instant petition for review without the assistance of their medical providers.

---

[12] Thereafter, the Department of Public Welfare filed exceptions to the *decree nisi* entered by Judge McPhail. In an *en banc* decision, this Court sustained the exceptions in part. *Fischer v. Department of Public Welfare*, 482 A.2d 1148 (Pa. Cmwlth. 1984) (*Fischer III*). This Court held that the Abortion Control Act did not violate the Equal Rights Amendment or the equal protection clause of the Pennsylvania Constitution. It affirmed the injunction against enforcing the requirement that the victim of rape or incest report its occurrence within 72 hours to qualify for Medical Assistance coverage of an abortion. The Department did not appeal this injunction. *Fischer v. Department of Public Welfare*, 502 A.2d 114, 117 n.8 (Pa. 1985) (*Fischer IV*).

13

We conclude that Reproductive Health Centers do not have standing to vindicate the constitutional rights of all women on Medical Assistance, some of whom may not be their patients, and who may or may not agree with the claims asserted on their behalf in the petition for review. The interests of Reproductive Health Centers are not inextricably bound up with the equal protection interests of all women enrolled in Medical Assistance.

Alternatively, Reproductive Health Centers assert that they have standing because they perform abortions at a financial loss. Petition for Review ¶36. Specifically, they "lose money" because they "regularly subsidize (in part or in full) abortions for Pennsylvania women on Medical Assistance who are not able to pay the fee on their own." *Id.* ¶85. Further, their staff must assist patients to secure funding and question patients about personal matters to determine if they qualify for a coverage ban exception. *Id.* ¶¶84-87. Reproductive Health Centers acknowledge that the purpose of Pennsylvania's Equal Rights Amendment is to prohibit "sex-based discrimination by government officials in Pennsylvania." *Id.* ¶89. Likewise, they acknowledge that equal protection provisions guarantee "equal protection of the law" and prohibit "discrimination."[13] *Id.* ¶94. Reproductive Health Centers do not allege that they have been the victim of sex discrimination or denied equal protection of the law in violation of the Pennsylvania Constitution.

The harms to Reproductive Health Centers identified in their pleading are administrative or pecuniary, which do not bear a causal relationship to the constitutional claims presented in their petition for review. As such, their interest in

---

[13] As determined by the *Fischer IV* Court, the right at issue is the "purported right to have the state subsidize the individual exercise of a constitutionally protected right, when it chooses to subsidize alternative constitutional rights." *Fischer IV,* 502 A.2d at 121. *Fischer IV* established that there is no fundamental right to have the state fund the exercise of the right to an abortion.

the litigation they seek to advance is not "substantial, direct[,] and immediate." *Funk v. Wolf*, 144 A.3d 228, 243 (Pa. Cmwlth. 2016) (quoting *Fumo*, 972 A.2d at 496). An "immediate" interest requires a "causal connection between the action complained of and the injury to the party challenging it." *South Whitehall Township Police Service*, 555 A.2d at 795. Stated otherwise, to have standing, the litigant must show that its interest falls "arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question." *Application of Biester*, 409 A.2d 848, 851 n.6 (Pa. 1979) (citation omitted) (quotations omitted).

Here, the interest "protected or regulated" by the coverage ban is "the life and health of the women subject to abortion and to protect the life and the health of the child subject to abortion." 18 Pa. C.S. §3202(a). The interests sought to be protected by the Pennsylvania Constitution are the guarantee to equal protection of the laws and the prohibition against discrimination on the basis of sex. Reproductive Health Centers' asserted administrative and pecuniary interests do not fall within the "zone of interests" addressed in either the Abortion Control Act or the Pennsylvania Constitution.

Applying the principles established in *William Penn Parking* and *Harrisburg School District*, we hold that Reproductive Health Centers lack standing to vindicate the constitutional rights of third parties, who may or may not agree with this litigation brought on their behalf. They have not alleged harms to their own interests that are protected by the provisions of the Pennsylvania Constitution that they seek to vindicate. Accordingly, we will sustain the Commonwealth Respondents' demurrer to the petition for review for the reason that Reproductive Health Centers lack standing.

15

## II. Failure to State a Claim

In *Fischer IV*, 502 A.2d 114, the Pennsylvania Supreme Court considered each constitutional claim raised in the petition for review *sub judice*. At the outset, the Supreme Court stated that "[t]his case does not concern the right to an abortion." *Id.* at 116. Rather, the Supreme Court defined the question as whether, "because this Commonwealth provides funds to indigent women for a safe delivery," it is "equally obliged to fund an abortion." *Id.* The Supreme Court concluded that the answer was no. It held, expressly, that the coverage ban did not violate any of the provisions of the Pennsylvania Constitution cited in the instant petition for review. This Court is bound by the decisions of the Pennsylvania Supreme Court. *Zauflik v. Pennsbury School District*, 72 A.3d 773, 783 (Pa. Cmwlth. 2013). On this basis, the Commonwealth Respondents and the Intervenors have demurred to the instant petition for review.

In *Fischer IV*, the appellants were a taxpayer, several women enrolled in medical assistance who were pregnant and desired nontherapeutic abortions, a clergyman, medical providers of abortion services and a charitable organization that counseled rape victims (collectively, *Fischer* appellants). The *Fischer* appellants challenged the constitutionality of the coverage ban, arguing that it violated the following provisions of the Pennsylvania Constitution: the equal protection guarantees contained in Article I, Section 1 and Article III, Section 32; the anti-discrimination prohibition in Article I, Section 26; and the Equal Rights Amendment in Article I, Section 28.

Beginning with the *Fischer* appellants' equal protection claim, our Supreme Court explained that Article I, Section 1, and Article III, Section 32[14]

---

[14] This section provides:

16

guarantee the citizens of this Commonwealth equal protection under the law. Nevertheless, a citizen's right to engage in an activity free of government interference does not require the Commonwealth to provide the means to do so. However, when the Commonwealth funds an activity, it must fund it for all, unless there is a constitutionally valid reason to limit that funding.

The Supreme Court framed the *Fischer* appellants' constitutional issue as the "purported right to have the state subsidize the individual exercise of a constitutionally protected right, when it chooses to subsidize alternative constitutional rights." *Fischer IV*, 502 A.2d at 121. Noting that "financial need" did not create a suspect class, *id.* at 122, the Supreme Court applied the rational

---

The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:

1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:

2. Vacating roads, town plats, streets or alleys:

3. Locating or changing county seats, erecting new counties or changing county lines:

4. Erecting new townships or boroughs, changing township lines, borough limits or school districts:

5. Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury:

6. Exempting property from taxation:

7. Regulating labor, trade, mining or manufacturing:

8. Creating corporations, or amending, renewing or extending the charters thereof:

Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed.

PA. CONST. art. III, §32.

relationship test.[15] This requires that the legislative classification be directed at the accomplishment of a legitimate governmental interest and operate in a manner that is neither arbitrary nor unreasonable. *Id.* at 123.

In the case of the coverage ban, the legislative classification distinguishes abortions necessary to save the life of the mother from nontherapeutic abortions. The Supreme Court concluded that this classification relates to the stated legislative objective of life preservation because it encourages "the birth of a child in all situations except where another life would have to be sacrificed." *Id.* at 122. Further, the stated purpose of "preserving potential life" was accomplished by the coverage ban because "it accomplishes the preservation of the maximum amount of lives, *i.e.*, those unaborted new babies, and those mothers who will survive though their fetus be aborted." *Id.* at 122-23.[16]

The Supreme Court next considered the *Fischer* appellants' argument that the state punished women who elected abortions in violation of Article I, Section 26 of the Pennsylvania Constitution, which provides that citizens are not to be harassed or punished for the exercise of their constitutional rights. The Supreme Court rejected this claim, explaining that Article I, Section 26 cannot be construed

> as an entitlement provision; nor can it be construed in a manner which would preclude the Commonwealth, when acting in a manner consistent with state and federal equal protection

---

[15] The Supreme Court also held that even if an intermediate level of scrutiny was appropriate, the coverage ban would pass "constitutional muster." *Fischer IV*, 502 A.2d at 123.

[16] Although the *Fischer* appellants did not raise claims under the United States Constitution, our Supreme Court observed that the federal limitation on funding abortions, known as the Hyde Amendment, Pub. L. 96-123, §109, 93 Stat. 926, had been sustained by the United States Supreme Court, which reasoned that the government's choice to favor childbirth over abortion did not offend the United States Constitution. *Fischer IV*, 502 A.2d at 120.

> guarantees, from conferring benefits upon certain members of a class unless similar benefits were accorded to all.

*Fischer IV*, 502 A.2d at 123. The Supreme Court concluded that the Commonwealth has "merely decided not to fund [abortion] in favor of an alternative social policy," and this decision did not offend Article I, Section 26. *Fischer IV*, 502 A.2d at 124.

The Supreme Court then turned to the argument of the *Fischer* appellants that the classification between pregnant women who choose to give birth and pregnant women who choose to have an abortion offended the Equal Rights Amendment in Article I, Section 28 of the Pennsylvania Constitution. The *Fischer* appellants argued that because medically necessary services for men were covered and a medically necessary abortion, which can only affect women, was not covered, "the state has adopted a standard entirely different from that which governs eligibility for men." *Fischer IV*, 502 A.2d at 124 (quotation omitted). The Supreme Court rejected the notion that the legislative classification in question related to sex.

The Supreme Court explained that the purpose and intent of the Equal Rights Amendment

> is to insure equality of rights under the law and to eliminate sex as the basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be a man or a woman.

*Id.* (quoting *Henderson v. Henderson*, 327 A.2d 60, 62 (Pa. 1974)). The classification in the coverage ban related to a procedure, abortion, and to a woman's voluntary choice. *Id.* at 125. It did not impose a benefit or burden on the basis of the citizen's sex simply because the procedure involved "physical characteristics

unique to one sex." *Id.* (quoting *People v. Salinas*, 551 P.2d 703, 706 (Colo. 1976)). Thus, the Supreme Court held that the coverage ban did not violate Pennsylvania's Equal Rights Amendment.

Reproductive Health Centers raise the precise constitutional claims that were raised in *Fischer IV*, 502 A.2d 114, and unequivocally rejected by the Supreme Court. Reproductive Health Centers acknowledge that "*Fischer* [*IV*] is precedential" but argue that it was "wrongly decided." Reproductive Health Centers' Brief at 2. They contend that our Supreme Court's holding was "poorly reasoned at the time it was decided" and that "legal developments since the decision also undermine its legitimacy." *Id.* at 2-3. Even if they are correct, this Court is bound by *Fischer IV* and is "powerless to rule that decisions of [our Supreme] Court are wrongly decided and should be overturned." *Griffin v. Southeastern Pennsylvania Transportation Authority*, 757 A.2d 448, 451 (Pa. Cmwlth. 2000) (citations omitted).[17] In short, any argument that *Fischer IV* was wrongly decided must be presented to the Pennsylvania Supreme Court. *See Griffin*, 757 A.2d at 451.

The petition for review does not state a claim upon which relief can be granted. All of its legal claims have been addressed, and rejected, by our Supreme Court in *Fischer IV*, 502 A.2d 114.

---

[17] *Amicus Curiae* PARCRJ argues that intermediate courts have refused to follow the Pennsylvania Supreme Court's decisions on "rare occasions" and that this Court should do so here. PARCRJ Brief at 17-18. PARCRJ cites a decision of the Pennsylvania Superior Court in *Manley v. Manley*, 164 A.2d 113, 119-20 (Pa. Super. 1960), that declined to follow *Matchin v. Matchin*, 6 Pa. 332 (1847), a Supreme Court decision holding that a wife in a divorce action could not raise insanity as a defense. *Matchin* had been severely criticized by courts of other jurisdictions and commentators on the subject of divorce, and subsequent Supreme Court rulings had weakened its precedential value. *Manley*, 164 A.2d at 120. Indeed, for 65 years, the Supreme Court made no reference to *Matchin*. By contrast, our Supreme Court has not called into question the *Fischer IV* decision.

**Conclusion**

We hold that Reproductive Health Centers lack standing to challenge the coverage ban on the basis of the constitutional rights belonging to third parties and sustain the demurrer of the Commonwealth Respondents. Because the petition for review fails to state a claim upon which relief can be granted, we sustain the demurrer of the Commonwealth Respondents and the Intervenors. Accordingly, we dismiss the petition for review.

_____
MARY HANNAH LEAVITT, President Judge

Judge Brobson and Judge Crompton did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Reproductive Health Center, :
Allentown Women's Center, :
Delaware County Women's :
Center, Philadelphia Women's Center, :
Planned Parenthood Keystone, Planned :
Parenthood Southeastern Pennsylvania, and :
Planned Parenthood of Western Pennsylvania, :
     Petitioners :
 :
    v. : No. 26 M.D. 2019
 :
Pennsylvania Department of Human Services, :
Teresa Miller, in her official capacity as :
Secretary of the Pennsylvania Department of :
Human Services, Leesa Allen, in her official :
capacity as Executive Deputy Secretary for the :
Pennsylvania Department of Human Service's :
Office of Medical Assistance Programs, and Sally :
Kozak, in her official capacity as Deputy Secretary :
for the Pennsylvania Department of Human :
Service's Office of Medical Assistance Programs, :
     Respondents :

# **O R D E R**

AND NOW, this 26th day of March, 2021, the preliminary objections of Respondents are SUSTAINED as set forth in the attached Opinion, and Petitioners' petition for review is DISMISSED.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Reproductive Health : 
Center, Allentown Women's Center, : 
Delaware County Women's Center, : 
Philadelphia Women's Center, : 
Planned Parenthood Keystone, : 
Planned Parenthood Southeastern : 
Pennsylvania, and Planned Parenthood : 
of Western Pennsylvania, : 
          Petitioners : 
           : 
        v. :   No. 26 M.D. 2019
           :   ARGUED:  October 14, 2020
Pennsylvania Department of Human : 
Services, Teresa Miller, in her official : 
capacity as Secretary of the : 
Pennsylvania Department of Human : 
Services, Leesa Allen, in her official : 
capacity as Executive Deputy : 
Secretary for the Pennsylvania : 
Department of Human Service's : 
Office of Medical Assistance : 
Programs, and Sally Kozak, in her : 
official capacity as Deputy Secretary : 
for the Pennsylvania Department of : 
Human Service's Office of Medical : 
Assistance Programs, : 
          Respondents : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge

CONCURRING AND DISSENTING OPINION
BY JUDGE CEISLER              FILED:  March 26, 2021

I concur with the outcome reached by the majority. However, I respectfully disagree with the majority's conclusion that Petitioners lack standing to bring this action.

Petitioners (Providers) are medical providers asserting that Pennsylvania's statutory restriction under 18 Pa. C.S. § 3215(c) (Coverage Ban) on public abortion funding for recipients of publicly funded medical benefits (Medical Assistance) is a violation of patients' rights under the Pennsylvania Constitution's equal rights and equal protection guarantees. *See* Pa. Const. art. I, §§ 1, 26, 28; art. III, § 32. Respondents, various Commonwealth parties (Commonwealth), contend Providers lack standing to assert claims on behalf of non-party patients. However, applicable precedents demonstrate that Providers have standing based on their connection to their patients and their allegations of direct harm to themselves.

Providers aver that they collectively provide about 95% of all abortions performed in Pennsylvania. Pet. for Review, ¶ 56. Providers further aver that they are suing on behalf of their patients receiving Medical Assistance who seek abortions but are ineligible for Medical Assistance coverage of the cost because of the Coverage Ban. *Id.*, ¶ 39. Providers also assert that they themselves are directly harmed by the Coverage Ban's funding limitation for abortions, because they have to divert money and staff time from other work to help their patients who cannot afford an abortion, they subsidize abortions for women who cannot afford them, they expend staff resources to assist patients in securing private funding for abortions, and they are required to explore personal matters with their patients to determine whether one of the Coverage Ban's exceptions applies. *Id.*, ¶¶ 36, 58, 84-87.

The Commonwealth argues these averments are insufficient to confer third-party standing for Providers to assert constitutional challenges on behalf of non-

party patients. In my view, Providers have standing, and the Commonwealth's preliminary objection on this issue should be overruled.

The Commonwealth cites authorities for the general proposition that standing requires allegations of direct harm. The Commonwealth argues Providers have not pleaded sufficient direct harm. However, the Commonwealth offers no analysis or authority relating specifically to medical providers and their patients.

By contrast, Providers offer detailed analysis and citations of authorities directly on point. Providers argue persuasively that analogous United States Supreme Court authority, adopted by this Court as applicable in Pennsylvania, confers standing in the circumstances of this case.

### *Singleton v. Wulff*

In *Singleton v. Wulff*, 428 U.S. 106 (1976), two physicians challenged a Missouri statute that limited public funding of abortions to cases where abortion was medically indicated. The defendants filed a pre-answer motion challenging the plaintiffs' standing. A plurality of the United States Supreme Court held that the physicians had standing to bring constitutional claims on behalf of Medical Assistance patients seeking abortions. *Id.* at 118.

The plurality observed that the standing issue raised two distinct questions. The first question was whether the plaintiffs had alleged an "injury in fact," a sufficiently concrete interest in the outcome of the litigation to invoke a federal court's jurisdiction. *Id.* at 112. The plurality concluded that the physicians had alleged a sufficiently concrete interest in the outcome, because they stated they had performed and would continue to perform abortions for which they would be entitled to reimbursement if not for the challenged statute. If the physicians prevailed, the plurality reasoned, they would benefit by receiving payment from the state.

However, because this first inquiry relates solely to invoking *federal* jurisdiction, it is not involved here.

The second standing question is "whether, as a prudential matter, the plaintiff[s] are proper proponents of the particular legal rights on which they base their suit." *Id.* The plurality easily concluded that the physicians had standing to the extent they were asserting *their own* "constitutional rights to practice medicine." *Id.* at 113. The real issue was whether the physicians had standing to assert claims based on *the rights of their patients*. *Id.*

The plurality observed that standing to assert constitutional rights of third parties should be accorded sparingly. The true holders of the rights at issue may not wish them asserted, and in any event, they themselves are usually the best proponents of their own rights. *Id.* at 114. Therefore, the plurality formulated a two-part test for standing to assert the rights of third parties:

First, the relationship between the litigant and the third party whose rights are asserted must be such that "the right is inextricably bound up with the activity the litigant wishes to pursue. . . ." *Id.* Further, the relationship between the litigant and the third party must be such that the litigant is "fully, or very nearly, as effective a proponent of the right" as the third party. *Id.* at 115 (citing doctor-patient relationships in *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965), and *Doe v. Bolton*, 410 U.S. 179, 188-89 (1973)).

Second, the third party must lack the ability to assert her own right. There must be "some genuine obstacle to such assertion, [such that] the third party's absence from court loses its tendency to suggest that [her] right is not truly at stake, or truly important to [her], and the party who is in court becomes by default the right's best available proponent." *Id.* at 116 (noting, for example, that forcing a third

party to assert her own right to remain anonymous "'would result in nullification of the right at the very moment of its assertion.'" *Id.* (quoting *NAACP v. Alabama*, 357 U.S. 449, 459 (1958)).

Applying the first factor, the parties' relationship, the plurality found:

> The closeness of the relationship is patent . . . . ***A woman cannot safely secure an abortion without the aid of a physician***, and an impecunious woman cannot easily secure an abortion without the physician's being paid by the State. The woman's exercise of her right to an abortion, whatever its dimension, is therefore necessarily at stake here. Moreover, the constitutionally protected abortion decision is one in which the physician is intimately involved. *See Roe v. Wade*, 410 U.S. [113,] 153-156 [(1973)]. ***Aside from the woman herself, therefore, the physician is uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against, that decision***.

*Singleton*, 428 U.S. at 117 (emphasis added).

Applying the second factor, the plurality recognized "several obstacles" to women's ability to assert their own abortion rights, including their desire to maintain the privacy of their decisions and the "imminent mootness" of any individual claim. *Id.* The plurality acknowledged these obstacles could be overcome: a woman might bring suit under a pseudonym; she might avoid mootness and retain her right to litigate after pregnancy because the issue was "capable of repetition yet evading review"; and a class action might be possible. *Id.* Regarding the class action, however, the plurality observed that "if the assertion of the right is to be 'representative' to such an extent anyway, there seems little loss in terms of effective advocacy from allowing its assertion by a physician." *Id.* at 117-18.

Accordingly, applying the two factors it had identified, the plurality concluded "that ***it generally is appropriate to allow a physician to assert the rights***

*of women patients as against governmental interference with the abortion decision . . . .*" *Id.* at 118 (emphasis added).

### *Harrisburg School District v. Harrisburg Education Association*

*Singleton*, standing alone, is not binding authority here for three reasons: it was a plurality opinion, it related only to claims under the federal constitution, and it analyzed standing only in relation to claims in federal courts. However, in *Harrisburg School District v. Harrisburg Education Association*, 379 A.2d 893 (Pa. Cmwlth. 1977) (*en banc*), **this Court expressly adopted the Singleton plurality's two-factor analysis** for determining standing to assert a third party's constitutional rights in Pennsylvania courts. *Id.* at 896.

In *Harrisburg School District*, the school district sued the teachers' union, seeking injunctive relief to stop striking teachers from picketing the school board members' private homes. The claim asserted the board members' privacy rights under the Pennsylvania Constitution. The union filed preliminary objections challenging the school district's standing to assert the board members' individual constitutional rights.

After quoting extensively from the *Singleton* plurality opinion, this Court held:

> Singleton . . . offers two "factual elements" for consideration in determining whether the general rule that one may not claim standing to vindicate the constitutional rights of others should not apply[:] the first, whether the relationship of the litigant to the third party is such that enjoyment of the right by the third party is inextricably bound up with the activity the litigant seeks to pursue; and the second, whether there is some obstacle to the assertion by the third party of his own right. ***We adopt this rule for standing to assert third party constitutional rights.***

*Id.* (emphasis added).

EC - 5

This Court found standing absent under the facts of *Harrisburg School District*. However, this Court expressly acknowledged the conclusion in *Singleton* that under the two-factor test, physicians had standing to assert a constitutional challenge to an abortion funding restriction on behalf of their patients. *Id.*

In short, the analysis of the United States Supreme Court plurality in *Singleton* concluded that physicians have standing to assert constitutional claims on behalf of their clients in federal court. This Court in *Harrisburg School District* concluded that the analytical framework applied in *Singleton* is also applicable to constitutional standing in Pennsylvania. Taken together, *Singleton* and *Harrisburg School District* strongly support Providers' standing to assert their patients' constitutional rights here.

### *Pennsylvania Dental Association v. Department of Health*

In *Pennsylvania Dental Association v. Department of Health*, 461 A.2d 329 (Pa. Cmwlth. 1983) (*en banc*), the Pennsylvania Dental Association (PDA) alleged that statutory and regulatory amendments to reporting and file inspection requirements for dentists would violate the constitutional privacy rights of dental patients. The Department of Health (DOH) challenged the PDA's standing to assert the constitutional rights of patients. Citing *Singleton* and *Harrisburg School District*, this Court found that dentists had standing to assert their patients' constitutional rights:

> [U]nless individual patients had some means of knowing that the effect of the [new] regulation may be to disclose some medical information which they may be entitled to withhold by invoking their constitutional claim of privacy, the only way those rights could be protected would be by the dentist who is responsible for the patient's records. We are of the opinion that the exception set forth in *Singleton* applies and that PDA has standing to raise this issue.

*Pa. Dental Ass'n*, 461 A.2d at 331.

### *Fischer v. Department of Public Welfare*

This Court's evenly divided decision in *Fischer v. Department of Public Welfare*, 444 A.2d 774, 776 (Pa. Cmwlth. 1982) (*en banc*), is not to the contrary. In *Fischer*, the petitioners challenged the Coverage Ban's limitations on Medical Assistance for abortions. They argued that public funding should be available to women whose physicians recommended abortions to preserve their health, even if their lives were not in imminent danger. Further, they contended that abortion coverage should be available to Medical Assistance recipients seeking abortions on religious grounds.[1] They also challenged the notice provisions that were part of the Coverage Ban at that time, which required a woman to notify criminal authorities within 72 hours of a rape or discovery of a pregnancy resulting from incest, in order to be eligible for Medical Assistance coverage for the related abortion.

In addition to women who were receiving Medical Assistance, the petitioners in *Fischer* included physicians and nonprofit providers of counseling and other services to Medical Assistance recipients. The physicians asserted the Coverage Ban would cause them direct economic hardship and would prevent them from providing necessary medical services according to their best medical judgment. *Id.* at 776.

---

[1] One petitioner in *Fischer v. Department of Public Welfare*, 444 A.2d 774, 776 (Pa. Cmwlth. 1982) (*en banc*), claimed the tenets of her faith supported the abortion she was seeking. As one three-judge opinion (Craig opinion) in *Fischer* explained, "certain religious sects deem abortion to be the only moral response to certain pregnancies including those which will result in great suffering on the part of the pregnant woman or great danger to her health short of the threat of death necessary for reimbursement under the [statutory restriction on public abortion funding contained in 18 Pa. C.S. § 3215(c) (Coverage Ban)]." *Id.* at 782. Thus, the religious argument was closely aligned with the health preservation argument.

The respondents filed preliminary objections challenging the standing of the physicians and counseling entities to assert claims relating to the Coverage Ban's reporting requirements. This Court's *en banc* panel was evenly split three to three on that issue. Thus, neither three-judge opinion is precedential.

### 1. **Blatt Opinion**

One three-judge group (Blatt opinion) would have upheld the challenge to standing. The Blatt opinion reasoned:

> There are clearly no allegations that the petitioner-doctors are in any way harmed or that the nonprofit organizational petitioners suffer any direct harm to themselves as a result of the reporting requirements. Absent such allegations of direct, substantial and immediate injury to such petitioners themselves we must conclude that the doctors and these organizations do not have standing to bring this action. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269 ([Pa.] 1975).

*Fischer*, 444 A.2d at 779. The Blatt opinion observed, "[W]e cannot say that mere concern for or attempts to aid a certain class of persons automatically endows [sic] an organization with standing to sue on their behalf." *Id.* Notably, the Blatt opinion did not mention the analysis of *Singleton* or *Harrisburg School District*. Thus, it appears the Blatt opinion was issued without the benefit of considering the most closely applicable precedents. Its reasoning is arguably contrary to those decisions.

Moreover, the Blatt opinion is distinguishable. First, in *Fischer*, the only challenge to standing related to reporting requirements for victims of rape and incest who were seeking to terminate the resulting pregnancies. The reporting requirements did not bear the same close relation to physicians' services that the abortions themselves did. Further, here, Providers expressly pleaded that they do and will continue to incur direct damages of the same type alleged in *Singleton* due

to providing abortion services for which they are not reimbursed.  Therefore, the Blatt opinion's reasoning against standing is inapplicable here.[2]

## 2. **Craig Opinion**

By contrast, the other three-judge panel in *Fischer* (Craig opinion) would have overruled the preliminary objection to standing.  Relying on *Singleton* and *Harrisburg School District*, the Craig opinion concluded that the physicians in *Fischer* were alleging the same kinds of direct financial damages that helped to confer standing in *Singleton* and *Harrisburg School District*.  *Fischer*, 444 A.2d at 781-82.

As stated above, Providers here pleaded the same sorts of direct financial damage.  *See* Pet. for Review, ¶¶ 36, 58, 84-87.  The Craig opinion therefore offers persuasive authority that Providers have standing here.

## **Conclusion**

Based on all of the authorities discussed above, I conclude that Providers have standing to maintain this action.  Therefore, I respectfully dissent on that issue.

_____
ELLEN CEISLER, Judge

---

[2] In addition, although not mentioned in the Blatt opinion, it is notable that in *Fischer*, a number of patients were parties and were asserting their own constitutional rights, thus undermining the existence of any genuine obstacle to their assertion of such rights.  Therefore, the rationale behind the plurality rule in *Singleton v. Wulff*, 428 U.S. 106 (1976), was at least partially absent.